UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                         Case Number 18-20183

v.                                              Honorable David M. Lawson

TERRELL WHITE,

          Defendant.
_____/

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Terrell White has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. White has served approximately 18 months of a 48-month prison sentence for distributing controlled substances. He argues that a sentence reduction is justified by his medical conditions coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government concedes that White has shown extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if released. Although White's obesity coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because White has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Defendant Terrell White pleaded guilty to one count of conspiracy to distribute cocaine and oxycodone, 21 U.S.C. § 846. On March 12, 2019, he was sentenced to 48 months in prison to

be followed by three years of supervised release. He surrendered to the custody of the Bureau of Prisons on April 15, 2019, and he presently is confined at FCI Milan, in Milan, Michigan, which is a low-security facility that houses around 1,290 inmates. White presently has served approximately 18 months or around 38% of his custodial sentence. Public records of the BOP indicate that the defendant is scheduled to be released from prison on July 24, 2022. White is 25 years old.

On May 19, 2020, White submitted an administrative request for compassionate release, which the Warden at FCI Milan denied on June 25, 2020. On September 18, 2020, White, with the assistance of counsel, then filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.

The most recent data disclosed by the BOP indicates that there are 26 active coronavirus cases among inmates and eight among staff at the Milan facility. In addition, 85 inmates and 55 staff members previously were diagnosed and now have recovered. Reports indicate that three inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after [s]he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt

of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). White relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, No. 20-3701, --- F.3d ---, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a

motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

The government filed a supplemental brief in which it disagreed with this holding in *Jones*, called the decision "incorrect," labeled that holding "*dicta*," and urged this Court not to follow it. The *Jones* court did not see its decision that way, concluding that the application of section 3582(c)(1)(A) requires a sequential analysis, with consideration of the 3553(a) factors coming last in the sequence. *Jones*, 2020 WL 6817488, at *5 (reiterating that "a district court must make the two requisite 'find[ings]' before weighing the applicable § 3553(a) factors") (citing *Ruffin*, 978 F.3d at 1003–06). Because the district court did not address the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, the court of appeals held that it had to decide whether "the district court improperly refuse[d] to consider § 1B1.13 per the second step of § 3582(c)(1)(A)'s test." *Id.* at *7. That holding was necessary to the decision of the case. The government may not like the *Jones* court's answer to the question it posed, but calling it *dictum* misrepresents that holding in that case. Ethical lapses by the Executive Branch like this do not advance the cause of justice, irrespective of the underlying merits of the motion.

A.

Addressing the first element — extraordinary and compelling reasons — White argues that his pre-existing medical conditions consisting of morbid obesity and prediabetes render him vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in

custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Id.* at *2 n.6.

The government concedes that the request for release has been administratively exhausted and that the defendant's obesity qualifies as a recognized serious medical risk factor. Nevertheless, the government argues that, even if the defendant does medically qualify for release, he should not be released because of the seriousness of his crime — involving the distribution of large quantities of cocaine and pills through his brother's drug trafficking organization.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of

high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

Although the government disputes that White is prediabetic, as the condition is not indicated anywhere in his medical records, it concedes that White is morbidly obese. White stands at about 5'10," and his weight ranged from 294 to 320 pounds, meaning that his BMI ranged from 42 to 45.9. Medical Records, ECF No. 222, PageID.1318-20; 1327-28. Most recently, his BMI was calculated as 45.9 in July 2020. *Id.* at PageID.1318 The CDC's guidelines advise that individuals who are severely obese (BMI of 40 or greater) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (Oct 6, 2020), https://bit.ly/34aDRY6. The government concedes that "White has satisfied the first eligibility threshold for compassionate release during the pandemic," in light of "the heightened risk that Covid-19 poses to someone with morbid obesity." Response, ECF No. 221, PageID.1311. The government never addressed the conditions of FCI Milan.

B.

Although the defendant has made a satisfactory showing of extraordinary and compelling medical risk, early release is not justified in this case because the relevant 3553(a) factors weigh decidedly against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. Despite the government's twisted reading of the precedent, noted above, that argument is a dead letter after the Sixth Circuit's decision in *Jones*, 2020 WL 6817488 at *7 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

White's crime is serious. He played a key leadership role in a significant drug trafficking conspiracy, coordinating the distribution of 100-400 kilograms of controlled substances, which

included cocaine and opiates. He possessed firearms throughout the conspiracy and maintained multiple premises to evade police.

The Court determined at the time of sentencing that the 48-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a), and one of those goals — protection of the public — was paramount in this case. The defendant has been well behaved and compliant in a prison setting, although he has refused to complete the Residential Drug Abuse Program in prison, which is cause for concern in light of his offense. But even if White's prison conduct can be viewed as commendable, it does not alter the historical fact that the Court plainly imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing that sentence by nearly two-thirds of the original custodial term certainly would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, particularly in conjunction with the remote risk of infection in the present circumstances of confinement. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served only small portions of their sentences, particularly where there were few or no active infections at the prisons where they were confined. *E.g.*, *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020) ("Given the gravity of Benge's drug offense and that he has only served a fraction of his 240-month sentence, release is not appropriate. Further,

Benge's drug trafficking offense suggests that he poses a continued danger to the safety of the community."); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020) ("FCI Morgantown, where Myers is held, appears to be relatively safer than many comparable institutions. The facility holds only 482 inmates, none of which have active cases of COVID-19. . . . And unlike many defendants for whom courts granted motions for compassionate release, Myers has not served the majority of his sentence. He served only about half of it.") (citations omitted).

### III.

White has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 201) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   December 9, 2020